TOWN OF GRUNDY CENTER, Appellee, v. TOM MARION, Appellant.

No. 45541.

426

JANUARY 13, 1942.

REHEARING DENIED MAY 8, 1942.

H. A. Willoughby and Swisher & Cohrt, for appellee.

W. L. Mooty, DeWolf & DeWolf, and McCoy & Beecher, for appellant.

STIGER, J.—Revised Ordinance No. 46 reads in part as follows:

"Section 3. Location. It shall be unlawful for any junk dealer to keep, maintain, operate or use, any building, lot or

other place, for the storing or depositing of junk, anywhere in the following territory.

"Within three hundred (300) feet of any building used for business or residential purposes.

"Section 4. Minors. It shall be unlawful for any junk dealer to purchase or receive any property from minors without the written consent of their parents or guardians. (5744 Par. 4)

"Section 5. Examination of Premises. Any peace officer shall have power to examine the premises of any junk dealer, for the purpose of discovering stolen property and it shall be unlawful for any junk dealer to refuse to allow any peace officer to make such examination (5744 Par. 4)

" *  *  *

"Section 7. Concealing Property. It shall be unlawful for any junk dealer to conceal or secrete any article purchased or received by him for the purpose of preventing identification thereof by any peace officer or by any person claiming the ownership of the same.

" *  *  *

"Section 9. Penalties. Anyone violating any of the provisions of this ordinance shall, upon conviction, be subject to imprisonment not exceeding thirty days, or to a fine not exceeding one hundred dollars" etc.

The petition alleged defendant, in violation of the ordinance, was conducting his business on Lots 8, 10, 11, Block 11, Copps Addition to the Town of Grundy Center, Iowa, within 300 feet of buildings used for business and residential purposes; that the maintenance of said junk business, and the depositing and storing junk, upon the premises was offensive and unhealthful, and repugnant to the morals, comfort and convenience of the plaintiff and the inhabitants thereof; that the plaintiff has no adequate, speedy and complete remedy at law.

The prayer asked that defendant be enjoined from such violation and for a mandatory injunction requiring defendant to remove the junk stored on said premises to some place within the city which is 300 feet or more from any buildings used for business or residential purposes. Relief was granted to the plaintiff as prayed by decree entered in the cause.

The street frontage of defendant's lots is 376 feet and the depth is 100 feet. At the time of the commencement of this suit defendant had purchased and deposited on his property old iron, old machinery, old automobiles, broken pieces of machinery, old tires, broken-up cars, old auto bodies, rags, old stoves, old upholstery, waste material and stuff of all kinds and junk. There is a fence on the west and south sides of the property. There is evidence that the junk yard is unsightly; constitutes a breeding place for rats; that burning of upholstery, old tires and generators produces an offensive, heavy, black smoke and that it has a detrimental effect on property values. There were 50 old cars on the premises that had not been broken down or wrecked. Defendant's business aggregated from $25,000 to $30,000 per year. Though denied by defendant, the fact that he is carrying on the business of a junk dealer is too thoroughly established by the record to require discussion.

There are ten or twelve business and residential properties within 300 feet of defendant's junk yard.

I. Appellant's first assignment of error is that the ordinance had not been duly adopted and was not in force and effect at the time in question. It was stipulated in the lower court that the only objection made by appellant to the ordinance was that it was not published as provided by law.

Section 5721.1, 1939 Code, reads:

"5721.1 Notice of revision. When a town revises its ordinances, it shall file a typewritten copy of the revision in the office of the town clerk and publish a notice once each week for three consecutive weeks in a newspaper published in the town, stating that its ordinances have been revised and that a copy of the revision is on file in the clerk's office for public inspection. The notice shall give the number and title of each ordinance. In case no newspaper is published in the town, the town clerk shall post the notice in three public places within the town."

We set out the material portions of the notice of revision of city ordinances published by the municipality.

"proceedings of town council.
"7:00 P. M. October 17, 1938
"Council Chambers.

"Council met as per adjournment of October 10, 1938, with the following present: [names of mayor and councilmen follow].

"The following named ordinances as revised were adopted:"

Here follows a reference to many ordinances including No. 46 which reads:

"An Ordinance to Regulate and License Junk Dealers and Prescribing Penalties for Violation.

"Council adjourned until the next regular meeting.
"Helene C. Heiberger, Clerk.

"Notice of Ordinance Revision.

"Notice is hereby given that the ordinances of the Town of Grundy Center, Iowa, have been revised and that a typewritten copy of such revised ordinances is on file in the office of the clerk for public inspection.

"The number and title of such revised ordinances are as follows:

"Number and Title
"Revised Ordinance No. 1.

"An ordinance providing for the corporate seal and defining its uses."

Then follow similar references to 66 revised ordinances. The reference to revised Ordinance No. 46 is:

"Revised Ordinance No. 46.

"An ordinance to regulate and license junk dealers and prescribing penalties for violation."

This notice was published once each week for three consecutive weeks in a newspaper published in Grundy Center and a typewritten copy of the revision was filed in the office of the town clerk.

Appellant claims the ordinance was not in effect at the time in question because (1) the notice of revision of the ordinance was not signed and (2) it does not appear that at the time of the adoption of the ordinance there was an ordinance

relating to junk dealers and therefore Ordinance No. 46 was not a revised ordinance.

Neither of these contentions can be sustained.

While notices should be signed, the purpose of a signature is to authenticate the instrument or writing and give notice of its source and it is well settled, that, unless otherwise especially provided, it is not necessary that the signature be placed at the foot of the instrument. 58 C. J. 724 and see Blair v. Hemphill, 111 Iowa 226, 82 N. W. 501. The city clerk signed the published notice at the foot of the proceedings of the council enumerating the ordinances that were revised and just prior to the designation of the revised odinances by number and title. It must have been plain to anyone reading the published notice that it emanated from and was published by the authority of the city council. We hold that the location of the signature of the clerk on the notice was sufficient to constitute a valid signing of the notice.

Ordinance No. 46 was recorded in a book containing the revised ordinances of the Town of Grundy Center. Its title is "Revised Ordinance No. 46" and was adopted and published as a revising ordinance. The mayor of Grundy Center, a witness for appellant, was asked whether Ordinance No. 46 revised a former ordinance. He replied that he had a faint impression that there was another ordinance with reference to handling junk.

"Q. Could you ascertain whether that is correct?

"A. I could.

"Q. Would you do so, and tell us?

"A. Well we could find out by reference to the old ordinance.

"Q. If you would.

"A. Whether there was any ordinance?

"Q. Yes.

"A. Yes, I will."

Nothing further appears in the record on this issue. Our conclusion from this record is that Ordinance No. 46 is a revised ordinance and complies with all of the provisions of section 5721.1.

Section 5719, 1939 Code, refers to original ordinances

and provides that they must be published in a newspaper. We think it is plain that section 5719 is not applicable to revised ordinances and that a publication of a revised ordinance in compliance with section 5721.1 is sufficient. We find the ordinance was published as required by the latter section.

II.   Another assignment by appellant reads:

"The court erred in granting the injunction for the following reasons:

"1. The ordinance in question is a penal ordinance only and cannot be enforced in a court of equity.

"2. The penalty prescribed by the ordinance in question for its violation is an adequate legal remedy.

"3. The town of Grundy Center did not by ordinance exercise the power conferred upon it by the State of Iowa through the Legislature to abate nuisances."

We cannot agree with appellant that Ordinance No. 46 is a penal ordinance and nothing more and that the penalty prescribed is an adequate remedy at law.   Though it is of course true that a court of equity will not enjoin the commission of a crime, the main purpose of this ordinance was not to create a crime and provide a penalty for its commission.   It is regulatory in nature and its primary purpose is to promote the public interest and welfare, the penal provision being incidental to the purpose of the city in passing the ordinance.

In State v. Fray, 214 Iowa 53, 241 N. W. 663, 81 A. L. R. 286, we held that a court of equity will enjoin the violation of the provisions of a statute enacted for the public interest though the violation is made a misdemeanor.   The opinion quotes, at page 56 of 214 Iowa, page 664 of 241 N. W., from the case of New Orleans v. Liberty Shop, 157 La. 26, 101 So. 798, 40 A. L. R. 1136, 1149:

" ' "The criminality of the act, it is said, neither gives nor ousts jurisdiction in chancery. * * * The remedy given is purely preventive; defendant is not punished for what he has done; this is left to the criminal courts. * * * Where an injunction is necessary for the protection of public rights, property or welfare, the criminality of the acts complained of does not bar the remedy by injunction." ' "

The only effective relief from a nuisance is its abatement and it is too clear to require discussion that a criminal prosecution is not an adequate remedy at law.

With reference to appellant's third proposition we will refer to certain statutory powers granted to municipalities that are material to the decision in this case.

Section 5714, 1939 Code, grants municipal corporations the general power to pass ordinances necessary for the safety, health, prosperity, order, comfort, convenience, etc., of its inhabitants.

Section 5743, subsection 3, delegates the power to regulate junk dealers.

Section 5744, subsections 3 and 4, provide they shall have power to restrain and prohibit:

"3. The deposit and removal of refuse, junk, offensive materials and substances and those engendering offensive odors and sights, so as to protect the public against the same.

"4. The purchasing or receiving by pawnbrokers and junk or second-hand dealers, of any property from minors, without the written consent of their parents or guardians, and to provide for the examination of the premises of such persons for the purpose of discovering stolen property."

Section 5739 reads in part:

"5739 Nuisances—action to abate. They shall have power to prevent injury or annoyance from anything dangerous, offensive, or unhealthful; to cause any nuisance to be abated, * * * and may maintain actions in equity to restrain and abate any nuisance."

Section 12395 and section 12396, subsection 1, read:

"12395 Nuisance — what constitutes — action to abate. Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof.

"12396 What deemed nuisances. The following are nuisances:

"1. The erecting, continuing, or using any building or other place for the exercise of any trade, employment, or manufacture, which by occasioning noxious exhalations, offensive smells, or other annoyances, becomes injurious and dangerous to the health, comfort, or property of individuals or the public."

The statutory power of a municipality to adopt ordinances, to promote the public welfare, to provide for the safety and comfort of its inhabitants and to declare and prevent nuisances. reflects its police power.

In State v. Cohen, 73 N. H. 543, 546, 63 A. 928, 930, it is stated:

"The business (junk dealer) endangers the public morals, safety, and welfare, and consequently is subject to regulation by an exercise of the police power of the state." Both Ordinance No. 46 and the statutes recognize that the business of junk dealer affects the public welfare. The business of junk dealer, because of its nature, may be declared a nuisance under the provisions of the statutes referred to above. Sioux City v. Simmons Co., 151 Iowa 334, 129 N. W. 978, was a suit to abate a nuisance caused by an obstruction by defendant of a watercourse in violation of an ordinance. The court said at pages 341 and 342 of 151 Iowa, page 981 of 129 N. W.:

"The city has in general the power 'to prevent injury or annoyance from anything dangerous, offensive, or unhealthy, and to cause any nuisance to be abated.' Code, section 696. [Section 5739, 1939 Code] * * * The ordinance being, therefore, a proper one, and within the scope of the exercise of power on the part of the city, we see no reason why an obstruction in the stream such as is prohibited by the ordinance may not be treated as a nuisance and abated at the suit of the city," etc.

The city had authority to regulate junk dealers, prescribe the circumstances under which the business could be conducted and declare the operation of the business in violation of its provisions a nuisance.

Appellant's argument that the ordinance is penal only, that it is not regulatory, that it is not an exercise of its police power to prevent nuisances must be rejected. Undoubtedly it was

passed by the city under its statutory power to declare and prevent nuisances.

Appellant complains that the ordinance does not, in express terms, declare its violation a nuisance. This was not necessary. Such a declaration would not make the prohibited act a nuisance if it were not a nuisance. It was adopted to prevent an injury to the public interest, and, in effect, made the maintenance of the junk business within 300 feet of resident or business property a public nuisance. In adopting the ordinance, the city acted well within its delegated powers.

Appellant contends his junk yard is not a common law nuisance, is not a nuisance per se. Were we to concede this claim it would not entitle him to a reversal as the city is not confined to the prevention of common law nuisances, but has, under its statutory powers, authority to adopt reasonable regulations concerning the use of property and declare what shall constitute a nuisance.

The case of City of Des Moines v. Manhattan Oil Company, 193 Iowa 1096, 184 N. W. 823, 23 A. L. R. 1322, discusses the police power of a municipality and its power to declare by ordinance what shall be considered nuisances. The opinion states on page 1111 of 193 Iowa, page 829 of 184 N. W.:

"That the state may directly, or through delegation of authority to municipalities, adopt and enforce reasonable regulations concerning the use and occupation of real estate in cities and towns is too well established to admit of serious dispute."

It contains the following quotation on page 1112 of 193 Iowa, page 830 of 184 N. W., from Commonwealth v. Parks, 155 Mass. 531, 532, 30 N. E. 174:

" 'It is settled that, within constitutional limits not exactly determined, the legislature may change the common law as to nuisances, and may move the line either way, so as to make things nuisances which were not so, or to make things lawful which were nuisances, although by so doing it affects the use or value of property.' "

Appellant's claim that the petition does not contain an averment that the violation of the ordinance constituted a nui-

sance but is an attempt to restrain the commission of a crime by a suit in equity is not supported by the record. The petition alleges the maintenance of the junk business and the depositing and storing junk, upon the aforesaid premises is offensive and unhealthful, and repugnant to the morals, comfort and convenience of the plaintiff and the inhabitants thereof and prays for an injunction.

III. We cannot agree with appellant's proposition that the ordinance is so indefinite, uncertain and unreasonable that it is unconstitutional and void. It is palpably definite and certain.

The municipality passed the ordinance pursuant to its statutory powers in the interest of the public and its violation substantially affects the rights of the public. The requirement that the business of junk dealer shall not be carried on within 300 feet of a building used for business or residential purposes is reasonably necessary to prevent an infringement upon the rights of the inhabitants of the city to the comfortable enjoyment of their life and property. On this question we cite Huston v. City of Des Moines, 176 Iowa 455, 156 N. W. 883; City of Des Moines v. Fowler, 218 Iowa 504; 255 N. W. 880; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N. W. 823, 23 A. L. R. 1322; Knack v. Velick Scrap Iron and Machinery Co., 219 Mich. 573, 189 N. W. 54; Smolensky v. City of Chicago, 282 Ill. 131, 118 N. E. 410.

In Huston v. City of Des Moines, 176 Iowa 455, 478, 156 N. W. 883, 892, it is stated:

"If passed in virtue of incidental or implied power granted by the legislature, courts will review the question of reasonableness and, if in excess of powers granted, may declare it invalid. But the unreasonable character of the ordinance must plainly appear."

The violation of the ordinance constituted a nuisance and the city had the statutory right to bring this suit in equity to restrain and abate it. The trial court was right in granting the injunctions as prayed.—Affirmed.

BLISS, C. J., and MITCHELL, OLIVER, GARFIELD, HALE, WENNERSTRUM, SAGER, and MILLER, JJ., concur.