STATE OF INDIANA ON THE RELATION OF ROBERT E. THRASHER AND WINIFRED M. THRASHER *v.* DAVID HAYES, TRUSTEE OF VAN BUREN TOWNSHIP[1]

[No. 1-777A140. Filed August 7, 1978. Rehearing denied September 15, 1978. Transfer denied January 29, 1980.]

---

---

1.   By order of the trial court, Farrell Duckworth, successor Township Trustee, was substituted as Respondent in place of David Hayes.

*Patricia Burchfield*, of Bloomington, for appellants.

LYBROOK, P.J.—Petitioners-appellants Robert and Winifred Thrasher (Thrashers) bring this appeal from the denial of their motion for the township trustee of Van Buren Township (Monroe County) to show cause

why he should not be held in contempt for failure to comply with a trial court order. This action arose from the following facts:

In August, 1973, the Thrashers constructed a fence along their half of a one-half mile boundary between their property and the property of the adjoining landowner, Margaret Reitz (Reitz). Thrashers then requested that Reitz construct and/or repair the remaining half and, after receiving no reply and no action on their request, the Thrashers contacted the township trustee for Van Buren Township of Monroe County, David Hayes (Trustee), in an effort to compel Reitz to erect a fence pursuant to IC 1971, 32-10-9-2, 3.[2]

---

2. "32-10-9-2 [30-202]. Construction or repair — Duty of Landowners. —

(a) It shall be the duty of all owners of land whose lands lie outside or abuts or lies adjacent to the boundary of the corporate limits of any town or city, to separate said land from adjoining lands by a partition fence to be constructed upon the line or lines dividing or separating said lands whether said lands were divided heretofore or may hereafter be divided.

(b) Except as hereinafter otherwise provided, or in case no division of said partition fence has been made between the landowners for the building or repairing or rebuilding of such partition fence, then in such case the landowner, whose land lies to the east of said fence, shall build the north half thereof and the landowner whose land lies to the west of said fence, shall build the south half thereof and if the landowner's land lies north of the fence to be built, rebuilt or repaired, he shall build, rebuild or repair the west half thereof, and if the land lies to the south of such fence, such landowner shall build the east half thereof.

(c) If either of such landowners shall have constructed one half [1/2] of any partition fence, other than the half prescribed in subsection (b) of this section, and shall have maintained such one half [1/2] of such partition fence for a period of not less than five [5] years, such landowners shall thereafter be entitled to continue to maintain such one half [1/2] of such fence, notwithstanding any of the provisions of subsection (b) of this section.

(d) *If any landowner fails to build, rebuild or repair such fence after receiving notice as is hereinafter provided, the township trustees wherein said land or line is located, shall build, rebuild or repair such fence as is hereinafter provided. . . ."*

"32-10-9-3 [30-203]. Cost Apportioned — Township trustee building — Streams — All partition fences shall be built, rebuilt, kept in repair at the cost of the several landowners whose lands are inclosed or separated by such fences equally according to the number of rods or proportion thereof such landowner may have along such line of fence, whether his, her or their title be in fee simple or in life estate. *If any landowner, as above defined, shall fail or refuse to compensate for building, rebuilding or repairing his, her or their proportion of fence, any landowner interested in such fence, after having built, rebuilt or repaired his portion of such fence, shall give to the defaulting landowner, his agent or tenant twenty [20] days' notice to build, rebuild or repair his proportion of such fence, as the case may be, and if such defaulting party shall fail to build, rebuild or repair such fence within said time, such landowner shall then notify the township trustee of the township*

The Thrashers and their counsel repeatedly contacted the trustee concerning this matter without result. They commenced this action by a petition for a writ of mandate, asking the Circuit Court of Monroe County to order the trustee to perform his duty as required by law. On March 24, 1976, the trial court issued the writ of mandamus ordering the trustee to make necessary repairs to the partition in question.[3]

In attempting to comply with the trial court order, the trustee contacted several persons concerning the fence repairs. He accompanied a few of them to the location and prepared written instructions detailing the repairs to be made. One workman, employed by the trustee, left without making repairs after Thrasher challenged his right to cross Thrasher's property to reach the fence. The trustee then sought and obtained written permission from the Thrashers to allow workmen to enter their property in order to reach the fence; however, the workman who returned departed again without making repairs when Thrasher insisted upon locking the gate through which the workman entered and exited the property. The trustee was unable to persuade the workman to return and encountered difficulty finding other repairmen who were willing to work on the fence because of the dispute.

The Thrashers then filed a motion in the trial court for the trustee to show cause why he should not be held in contempt of the court's previous order. A hearing was held on the motion December 23, 1976, and the trial court's findings of fact and conclusions of law (omitting the caption and formal parts) are as follows:

---

*wherein said lands are located of such fact*: Provided, That where the fence sought to be established, rebuilt or repaired is on a township line in such case, the complaining landowner or landowners shall notify the trustee of the township wherein the lands of the complaining landowner or landowners are located of the improvement he or they may desire made, and such trustee shall have jurisdiction of such matter, unless disqualified as hereinafter provided, estimate the costs for such fence, building, rebuilding or repairing the same, as the case may be, and within a reasonable time after being notified, such trustee shall make out a statement and notify such defaulting party of the probable cost of building, rebuilding or repairing such fence, as the case may be, and if after twenty [20] days, said fence is not built, rebuilt or repaired by such defaulting landowners, such trustee of such township shall build, or repair such fence, as the case may be: Provided, That such trustee shall use only the materials for such fences as is [are] most commonly used by the farmers of such community: . . ."

3. The writ ordered the substitution of the newly-elected trustee, Farrell N. Duckworth, in the place of the original respondent, David Hayes.

"1. That the Respondent, FARRELL N. DUCKWORTH, has made reasonable efforts to comply with the Orders of this Court;

2. That the failure of the Respondent to fully comply with the Orders of this Court has been occasioned, at least in part, by actions of the petitioner herein; and

3. That the Respondent, FARRELL N. DUCKWORTH, is not in contempt of this Court.

IT IS THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Court that:

1. That the Respondent carry out the Order of this Court dated March 24, 1976, as soon as is practicable in view of weather conditions and other considerations, and in any event by May 31, 1977, unless an extention [sic] of time is granted by this Court; and

2. That Petitioners herein ROBERT E. THRASHER, and WINIFRED M. THRASHER, refrain from any action or course of conduct of any manner, direct or indirect, which is calculated to, or does in fact, obstruct, hinder, delay, or otherwise frustrate the attempts of the Respondent, or his agents, in his efforts to comply with the Orders of this Court. Contacts and communications between Petitioners and Respondent, or his agents, shall be no more than are minimally necessary to make arrangements for the entry of Respondent or his agents upon the lands of the Petitioners to make such repairs as were ordered by the Court on March 24, 1976. Petitioners are further ORDERED to cooperate with Respondent and his agents to the extent of facilitating entry to the lands of Petitioners at such times and in such manner as may be reasonably necessary to comply with the Orders of this Court, by showing Respondent or his agents the shortest or most convenient route to the fence which must be worked upon, to unlock and open such gates as may be necessary to reach said fence and to refrain from locking or blocking any such gates or lanes as must be used to reach said lands.

It is further ORDERED that Respondent shall furnish Petitioners with written notice of the date or dates upon which Respondent or his agents shall enter the lands of Petitioners to effect repairs to the fence which is the subject of this action at least forty-eight hours in advance of said entry, after coordination by Respondent with Petitioners to select a mutually convenient time for said entry. Said written notice should be

received by Petitioners more than forty eight hours in advance of said entry.

> The Court specifically authorizes the entry of Resondent [sic] or his agents upon the lands of Petitioners at such reasonable times, in such reasonable manner and for the purposes outlined in this Order to effect the repairs ordered on March 24, 1976, without regard to whether the portions of fence repaired from entry upon the Petitioners lands are those of Petitioners or the adjoining land owner, MARGARET C. REITZ."

The following issues were presented for review by the Thrashers in their Motion to Correct Errors:

(1)  Whether the failure of the trial court to hold the trustee in contempt for noncompliance with its order denies the Thrashers equal protection under the law.

(2)  Whether the findings of the trial court were contrary to the evidence presented.

(3)  Whether the trial court exceeded its authority in adding conditions to its original orders of mandate.

(4)  Whether the portion of the trial court's decision ordering the Thrashers to refrain from and to perform, certain unspecified acts, is so vague and general that it is unenforceable.

(5)  Whether the Thrashers should be compensated for the use of their property by the township trustee in the performance of his duty.

## I.

The Thrashers first contend that the failure of the trial court to hold the township trustee in contempt for noncompliance with its order denied them equal protection under the law in that they could not avail themselves of the protection and benefits of the Indiana partition fence statute (IC 32-10-9-1, *et seq.*). They argue that the township trustees have practiced arbitrary and selective enforcement of the mandatory provisions of the law which dictate that the township trustee "shall" have the fence repaired at the expense of the reluctant party.

The constitutional issue before this court becomes then whether the statute providing for construction and repair of partition fences has been

administered in such a manner as to deny equal protection to the Thrashers.

"If all persons are treated alike under the law and under the same circumstances, no person can be said to be deprived of the equal protection of the laws ... The equal protection of the laws requires that the classification for legislative purposes must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair relation to the object of the legislation so that all persons in similar circumstances shall be treated alike." *Shedd v. Automobile Insurance Company of Hartford* (1935), 208 Ind. 621, 196 N.E. 227.

Under the ordinary equal protection rationale, the legislature is not precluded from indulging in classifications which treat one group differently from another. Generally, if a classification is rationally related to a legitimate purpose it will be sustained. *State ex rel. Indiana Youth Center v. Howard Juvenile Court* (1976), 264 Ind. 371, 344 N.E.2d 842.

In this case there is no unreasonable or arbitrary classification within the operative statute. Thrashers claim injury only in the trustee's failure to act under the statute. A similar argument was advanced in the case of *Highland Sales Corporation v. Vance* (1962), 244 Ind. 20, 186 N.E.2d 682, where the defendants challenged the prosecuting attorney's bringing an action against them when he failed to prosecute others for the same crime. The defendants in *Highland* claimed such selective enforcement was a violation of the constitutional guarantee of "equal protection."

The Court in *Highland* quoted from *Park Hill, etc., Co. v. City of Evansville* (1921), 190 Ind. 432, 130 N.E. 645:

"It is also the law that if a municipal ordinance, not invalid upon its face, shall be 'applied and administered by public authority with *an evil eye and an unequal hand,* so as practically to make an unjust and illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is within the prohibition [of amendment 14] of the Constitution' of the United States. *Yick Wo v. Hopkins* [1886], 118 U.S. 356, 373, 374, 6 Sup. Ct. 1064, 30 L.Ed.200; *Dobbins v. Los Angeles* [1904], 195 U.S. 223, 240, 25 Sup. Ct. 18, 49 L.Ed. 169." (Emphasis by Ct. in *Highland*).

The *Highland* decision addressed the role of a public official in exer-

cising his duties fairly, with particular emphasis on the role of the prosecuting attorney:

"It has been stated by represented authority that:

'A prosecuting attorney is ordinarily vested with official discretion as to the institution of criminal prosecutions and as to the cases he will prosecute, * * *. Such discretion must, however, be exercised in good faith * * * and in accordance with established principles of law, fairly, wisely, and with skill and reason; * * *.' 27 C.J.S. § 10, District & Prosecuting Attorneys, pp. 647, 649.

We do not minimize the duty of the prosecuting attorney to exercise the power of his office fairly and in good faith. However, in order to warrant judicial interference with the office of the prosecuting attorney because of either nonfeasance or malfeasance, it must be made to appear from the facts alleged that such misconduct consists of a gross and intentional failure or refusal to enforce the law in some major area or that such misconduct is actually the product of bad faith or evil design."

We think that a similar standard should be adopted in the present case. That is, judicial intervention would be required only when it appears that the township trustee's misconduct is the result of a gross and intentional failure or refusal to enforce the law or that such failure is actually the product of bad faith or evil design.

Under the facts of this case, it appears that Trustee Duckworth failed to follow his normal routine for handling partition fence disputes which called for a conference among the parties wherein the trustee would advise them to either fix the fence or he would have the repairs made at their expense. In his defense, however, the evidence shows that Trustee Duckworth assumed the office of trustee sometime after the dispute arose between the Thrashers and Mrs. Reitz. In addition, litigation had commenced between the property owners and relations were somewhat strained.[4]

4. The adjoining landowner or her brother-in-law brought charges against the Thrashers for theft of cattle that strayed onto Thrashers' farm, and for assault when Thrasher attempted to eject the adjoining landowner from Thrashers' property. The Thrashers have also been sued for damage caused when one of their animals strayed onto the adjoining land.

Trustee Duckworth repeatedly sought to employ workmen to repair the fence; however, the workmen either failed to commence working or began the task and left prior to its completion. The trustee's attempts to carry out the trial court's mandate were further frustrated by actions on the part of the Thrashers and Mrs. Reitz which interfered with the work. At the time of the hearing on Thrashers' motion to show cause, the trustee testified that he was unable to find anyone willing to undertake the fence repairs in light of the dispute between the adjoining landowners.

Where a person seeks to satisfy the court that his failure to obey an order was due to inability to render obedience, the burden is upon him to establish this fact. *Carey v. Carey* (1961), 132 Ind. App. 30, 171 N.E.2d 487.

It appears, then, that the trustee's failure to act was neither a gross and intentional failure or refusal to enforce the law, nor that such failure was a product of bad faith or evil design. The trial court could reasonably have reached the conclusion that the trustee was unable to render obedience to its mandate through no fault of his own, and thus contempt would not lie for his failure to act. We find no denial of equal protection under these circumstances.

## II.

Next, the Thrashers question whether the findings of the trial court were contrary to the evidence.

In determining whether a judgment is supported by sufficient evidence, this court neither weighs the evidence nor resolves questions of credibility of witnesses. Rather, this court views only the evidence most favorable to the appellee, together with all logical inferences flowing therefrom. In addition, it is only where the evidence leads to but one conclusion and the trial court has reached an opposite conclusion, that its decision will be disturbed as contrary to law. *Utica Mutual Insurance Co. v. Ueding* (1977), 175 Ind. App. 60, 370 N.E.2d 373.

Without burdening this opinion with a repetition of the facts set forth above, we are of the opinion that the trial court could reasonably find

that the trustee was unable to comply with the order of mandate although he made reasonable efforts to do so, that his failure was, to some extent, the result of actions by the Thrashers including their interference with workmen sent by the trustee to repair the fence, and that the trustee's failure to comply with the order was excusable. The evidence being in conflict on this issue, we will not disturb the decision of the trial court.

### III.

The Thrashers also assert that the trial court exceeded its authority in adding conditions to its original order of mandate. They contend that the conditions served either as an injunction against them or in the alternative, as a modification of the writ of mandamus, and that either alternative would require a motion directed to the trial court to effectuate that relief, as well as a hearing on the motion.

Thrashers claim that the provisions of IC 1971, 34-1-58-4 definitely restrict the courts in the relief they can grant in mandate actions and limit the relief to what the injured party may be entitled under the law and facts of such action, together with damages as in actions for false returns. They cite the case of *Perry County Council v. State ex rel. Baertich* (1973), 157 Ind. App. 586, 301 N.E.2d 219, in support of that argument.

In the case at bar however, the trial court's order was not a modification of the original order of mandate, but was an order in response to the Thrashers' motion for the trustee to show cause why he should not be held in contempt. The trial court specifically found that the trustee was not in contempt, that he had made reasonable efforts to comply with the orders of the court, and further that the trustee's failure to comply with the trial court's orders resulted, in part, from the actions of the Thrashers. The trial court then exercised its discretion in ordering the trustee to comply with the mandate order "as soon as is practicable in view of weather conditions and other considerations and in any event by May 31, 1977, unless an extension of time is granted. . . ." The trial court also attempted to facilitate the trustee's compliance by restricting the Thrashers' interference with the work to be done.

In reviewing the discretionary act of the trial court, we note that the term "discretion" implies flexibility in light of varying circumstances

and the absence of a hard and fast rule or a mandatory procedure. Discretion is a privilege allowed a judge within the confines of justice to decide and act in accordance with what is fair and equitable. The exercise of judicial discretion must be examined in light of and confined to the issue of the particular case, and is reviewable only for an abuse thereof. See *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.* (1978), 175 Ind. App. 416, 372 N.E.2d 742; *Preuss v. McWilliams* (1967), 141 Ind. App. 602, 230 N.E.2d 789.

For the court on appeal to find an abuse of discretion or reversible error, it is first necessary for the appellant to demonstrate prejudice. If the appellant is able to show prejudice, it is then his burden to prove that the trial court's error of judgment was clearly against logic and the natural inferences to be drawn therefrom. *Wells v. Gibson Coal Co.* (1976), 170 Ind. App. 445, 352 N.E.2d 838.

The Thrashers argue that the portion of the trial court's decision ordering them to refrain from interfering with the work and to perform certain unspecified acts is prejudicial to their rights as well as so vague and general that it is unenforceable.

Even if the order of the trial court does prejudice the rights of Thrashers, they have not proved that the judgment rendered was "clearly against logic and the natural inferences to be drawn therefrom." The trial court, in its order, has set forth guidelines to be met by the trustee and the Thrashers in order to facilitate the repair of the partition fence and end this litigation. Such a logical result is the admitted purpose of all the parties to this dispute, and we find no abuse of discretion in the trial court's attempt to accomplish that purpose.

IV.

The portion of the trial court's decision ordering the Thrashers to perform certain acts for and to refrain from hindering or delaying the trustee and his agents in the repair of the fence in question provides for 48 hour written advance notice to the Thrashers when repairmen seek entry upon their land, requests cooperation in finding the shortest or most convenient route to the fence, instructs the Thrashers to refrain from locking or blocking any gates or lanes used by workmen employed by the trustee, and specifically authorizes their entry upon Thrashers' land.

We find therefore that the portion of the decision which orders the trustee to comply with the original mandate order and establishes the procedure to be followed by both parties is not so vague and general that it is unenforceable.

## V.

Finally, we must consider whether the Thrashers should be compensated for the use of their property by the township trustee in the performance of his duty. The Thrashers maintain that there is no necessity for workmen employed to repair the partition fence to gain access to the fence via the Thrasher property, and further that such use of the property constitutes a "taking" for which the owner is entitled to compensation.

A "taking" of private property within the meaning of Art. I, § 21 of the Indiana Constitution has been defined by Indiana courts to include those situations where an act involves an actual interference with, or disturbance of, property rights, which are not merely consequential, or incidental injuries to property, or property rights, as distinguished from prohibition of use, or enjoyment or destruction of interests in property. Therefore, before private property is "taken" in a constitutional sense, there must be a substantial interference with the owner's use and enjoyment of the specific property which is allegedly taken. Whether the interference is substantial is a factual question which must be be resolved in each case by the trier of fact. *Indiana & Michigan Electric Company v. Stevenson* (1977), 173 Ind. App. 329, 363 N.E.2d 1254.

This Court will not attempt to reweigh the evidence and determine the necessity of crossing the Thrashers' property in order for the trustee to effectuate repairs on the partition fence. The trial court, which has viewed the fence and heard the evidence introduced at the hearing, was in a far better position to make that determination. In addition, the trial court has determined there is a necessity to cross Thrashers' property, and has so ordered the same. No further determination need be made as to whether such a "crossing" constitutes substantial interference with Thrashers' property rights, since this question was raised for the first time in the motion to correct errors. Further there was no evidence

in the record to support a finding of substantial interference or damage.

The judgment of the trial court is affirmed.

Affirmed.

Lowdermilk and Robertson, JJ., concur.

NOTE — Reported at 378 N.E.2d 924.